IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CYNTHIA G. WEIR-SPENCER,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant.

Case No. 10-CV-800-FHM

**OPINION AND ORDER**

Plaintiff, Cynthia G. Weir-Spencer, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's March 19, 2009, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held May 24, 2010. By decision dated August 16, 2010, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on October 21, 2010. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 50 years old on the amended date of disability onset and was 52 on the date of the ALJ's denial decision. She has a high school education and formerly worked as a concession vendor. She claims to have been unable to work since April 19, 2008 as a result of generalized osteoarthritis, degenerative disc disease of the cervical spine, depression, and anxiety.

## **The ALJ's Decision**

The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform medium work defined in C.F.R. § 404.1567(c) and 416.967(c), except she is limited to simple repetitive tasks and having no more than incidental contact with the public. Although Plaintiff is unable to perform her past relevant work, based on the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a

2

claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

**Plaintiff's Allegations**

Plaintiff argues that the ALJ: failed to perform a proper determination at step five; failed to properly weigh the medical source evidence; failed to perform a proper credibility determination; and failed to properly develop the record.

**Analysis**

Step Five Determination

At step five of the sequential evaluation, the ALJ considers whether there is work in the economy that the claimant can perform with his or her work-related limitations. 20 C.F.R. § 404.1520(g). Plaintiff argues that the ALJ failed to perform a proper determination at step five because the hypothetical question to the vocational expert failed to include restrictions on use of the hands, the ALJ ignored that Plaintiff required use of a cane, and ignored Global Assessment of Functioning (GAF) scores[2] in the record.

Plaintiff states that the ALJ ignored the GAF scores of less than 50 which appeared in her treatment records. Plaintiff points out that the vocational expert was asked about "the effect of chronically low [GAF] scores of 50 and below" on the ability to work on a sustained basis. Plaintiff argues that the ALJ ignored the vocational expert's answer which was unfavorable to the conclusion reached by the ALJ.

---

[2] The GAF score represents Axis V of the Multiaxial Assessment system. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 25-30 (4th Ed. 1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30.

3

The vocational expert's testimony did not directly relate to information in Plaintiff's medical record, the testimony was more of a generalized comment. In context, the question and answer were:

> Q: How would an individual assessed GAF scores ranging from 46 to 50 fare in the workplace?
>
> A: Well, if it's over a consistent period of time, normally people with those – that number usually has some fair [sic] significant limitations, and usually have trouble maintaining jobs.

[Dkt. 11-2, p. 43]. Plaintiff points to two GAF scores in her records, one dated December 19, 2008, [Dkt. 10-13, p. 43], and one dated April 7, 2010, [Dkt. 10-14, p. 12]. The December 2008 score was generated as part of formulating a treatment plan for Plaintiff. [Dkt. 10-13, pp. 35-43]. The April 2010 score was generated in the context of a "treatment review appointment." [Dkt. 10-14, p. 12]. These GAF scores may or may not qualify as GAF scores over a consistent period of time. That is a matter to be decided by the Commissioner. However, since the ALJ did not address the scores or that aspect of the vocational expert's testimony, the court cannot determine whether that information was considered by the ALJ and if it was considered how the ALJ factored it into the decision.

The court recognizes that there is no hard and fast requirement that the ALJ address GAF scores. In this case it is necessary. The record reflects that Plaintiff received mental health treatment from July 2006 to April 2010. The GAF scores are the only comment on Plaintiff's functional abilities from a treating medical source. Neither the agency's reviewing experts nor the ALJ commented upon the GAF scores which, based on the vocational expert's testimony, are at least relevant and are

4

possibly dispositive. Based on theses circumstances the case must be remanded for consideration and discussion of the GAF scores in light of the vocational expert's testimony.

A single mention of hand problems in the medical record without any indication that functional impairment resulted did not require inclusion of hand limitations in the RFC. The ALJ noted the May 20, 2010 medical record where some inflamation of the joints in the hands, tendon entrapment of the thumb on the right side, tenderness at the wrist, and a prescription for Naproxen were mentioned. [Dkt. 11-2, p. 17]. The ALJ also noted the results of the consultative physical examination where Plaintiff was found to have the ability to pick up and manipulate paperclips without difficulty and had grip strength which was equal bilaterally and rated at 5/5. *Id*. The court finds that the hypothetical question presented to the vocational expert was sufficient in that it contained all of the limitations found to exist by the ALJ. *See Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir. 2000) (approving a hypothetical as adequate where there was no evidence that nosebleeds or respiratory infections were expected to last twelve months); *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993) (approving a hypothetical as adequately reflecting the limitations found to exist by the ALJ).

Plaintiff argues that the ALJ ignored that Plaintiff uses a cane to walk sometimes and states: "[e]ven [the ALJ's] reviewers, whose opinions he accorded 'great weight,' also noted Claimant required use of a cane periodically." [Dkt. 14, p. 3]. Plaintiff's statement leaves the erroneous impression that use of a cane is indicated somewhere in the medical record. It is not. The medical consultants of the State Disability

Determination Service (DDS) noted Plaintiff's statement that she walks with a cane, not that the use of a cane is mentioned in the medical record. [Dkt. 11-13, pp. 92, 93]. The DDS consultants do note the consultative examiner's report that Plaintiff "moves all extremities well" and that her gait is stable "without the use of assistive devices." *Id*. The ALJ also noted this report in addition to Plaintiff's report that she walks her dog every other day about a mile. [Dkt. 11-2, p. 17]. The court finds no error in the ALJ's failure to include use of a cane in the RFC or the hypothetical questioning of the vocational expert.

### Consideration of Medical Source Evidence

Plaintiff argues that the ALJ erred in giving the opinion of DDS reviewers great weight. According to Plaintiff, the reviewer's finding that Plaintiff had a moderate limitation in concentration, persistence, and pace was inconsistent with their determination of her work-related activities. The court finds there is no such inconsistency and that Plaintiff's argument is wholly unsupported by the record.

Where, as in this case, there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). This procedure, known as the psychiatric review technique (PRT), requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P,

6

Appendix 1, §12.00 (C).  However, PRT findings do not necessarily relate to the ability to perform work-related activities and thus do not necessarily reflect limitations that must also appear in the RFC.  The ALJ explained in his decision that "the paragraph B" criteria are not RFC assessments. [Dkt. 11-2, p. 15].  Social Security Ruling 96-8p iterates this point.  SSR 96-8p, 1996 WL 374184 at *4.

The DDS reviewer, Sally Varghese, MD, completed a PRT form which included findings in the "paragraph B" areas, and included a finding of a moderate limitation in the area of concentration, persistence, and pace.  [Dkt. 11-13, p. 88].  In the "Consultant's Notes" portion of the form Dr. Varghese summarized Plaintiff's mental health records and offered the following conclusion:  "It is thought the clmt can do simple but not complex tasks.  She cannot relate to the general public."  [Dkt. 11-13, p 90].  Dr. Varghese also completed a Mental Residual Functional Capacity Assessment form in which the Plaintiff's ability to perform mental work-related activities was assessed.  In the category for "sustained concentration and persistence" Dr, Varghese noted that Plaintiff's ability to carry out detailed instructions was "markedly limited" but she was not limited in other abilities related to sustained concentration and pace.  [Dkt. 11-13, p. 74].  In the "functional capacity assessment" portion of the form, the instructions require that an elaboration of the capacities be recorded.  There Dr. Varghese stated:  "Plaintiff can perform simple tasks with routine supervision." [Dkt. 11-13, p. 76].  Dr. Varghese thus clearly and unmistakably noted the work-related impact of Plaintiff's moderate difficulties in concentration, persistence, and pace.

Plaintiff also argues that the DDS medical reviewers erred in "stating there were no deformities of the extremities when there was a demonstrable enlargement of the tight [sic]

7

thumb joint." Plaintiff has miscast the record.[3] On the page Plaintiff cited, the DDS reviewer noted:

> 5/20/09 exam at OU Family Clinic shows evidence of OA in c-spine, hips and hands. She has game cock thumb on right. Extremities show no clubbing, cyanosis, edema or deformity.

[Dkt. 11-13, p. 120]. The OU Clinic record for May 20, 2009 noted inflamation of the joints in the hands with tendon entrapment of the thumb on the right side and some tenderness at the wrist. [Dkt. 11-13, 97]. Under the heading "extremities," the following was recorded: "no clubbing, cyanosis, edema, or deformity noted." *Id*. The DDS reviewers did not mis-state the OU Clinic records.

## **Credibility Determination**

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005) (citation, brackets, and internal quotation marks omitted). The ALJ cited numerous grounds, tied to the evidence, for the credibility finding. In assessing Plaintiff's credibility, the ALJ noted Plaintiff's activities which include walking her dog and walking to the post office, the objective range of motion and strength findings, non-compliance with medication, side effects she complained of, improvement on compliance with taking Zoloft, and the opinions of the DDS reviewers. [Dkt. 11-2, pp. 16-19]. The ALJ thus properly linked his credibility finding to the record, therefore the undersigned finds no

---

[3] Counsel for Plaintiff is reminded of the responsibility to accurately present the facts to the court. Fed.R.Civ.P. 11(b)(3).

reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Development of the Record

Plaintiff points out that hearing counsel requested a mental consultative examination, that the ALJ said he would take it under advisement, and that a mental consultative examination was not obtained. Plaintiff states that the ALJ should have ordered the requested testing or explained why he felt it unnecessary. The court finds the absence of a mental consultative examination or explanation is not grounds for reversal.

"[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) In this case there is no direct conflict in the medical evidence requiring resolution; the medical evidence in the record is fairly extensive; and additional tests are not required to explain a diagnosis already contained in the record. *See Id. at* 1166. Further, there is no requirement that an ALJ explain the basis for refusing to accede to a request for a consultative examination. The court finds that the ALJ did not err in failing to order a consultative examination or in not providing an explanation as to why one was not ordered. However, on remand an explanation of why a mental consultative examination would not materially assist the resolution of the issue of disability would assist the court in its review of the decision.

**Conclusion**

The ALJ's decision is REVERSED and the case REMANDED for further proceedings in accordance with this Opinion and Order.

SO ORDERED this 28th day of March, 2010.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE